# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JASON TROWBRIDGE and JAIME TROWBRIDGE, individually and as natural parents of J.N.T., a minor child,<br><br>      Plaintiffs,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>      Defendant. | Case No. CV 07-32-S-REB<br><br><br>**MEMORANDUM DECISION AND ORDER ON DEFENDANT'S SECOND MOTION IN LIMINE (Docket No. 75)** |

Pending before the Court is Defendant United States' Second Motion in Limine (Docket No. 75). The Court has considered the parties' briefing and the record in this matter and finds that oral argument is not necessary. *See* D. Idaho L. Civ. R. 7.1(d)(2)(ii). Accordingly, the Court renders this decision and order upon the issues raised in that motion.

## I. DISCUSSION[1]

### A.      Timing of Defendant's Motion

"Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 (1984). In order to manage the trial in this case, the Court entered an Order Setting Trial (Docket No. 55), setting a June 1, 2009 deadline for

---

[1] The background is set forth more fully in the Court's Memorandum Decision and Order on Defendant's first motion in limine (Docket No. 58), and will not be restated here.

**MEMORANDUM DECISION & ORDER - 1**

motions in limine.[2]  The Government filed its second motion in limine on June 15, 2009, two

weeks after the deadline, but also two weeks before trial.

The Government requests that the Court consider the motion because, as a federal court

in Washington reasoned, a party"does not waive . . . evidentiary objections if they are not raised

via motions in limine." *Glein v. Matty*, 2001 WL 36101368 (W.D. Wash. 2001).  Indeed, *in*

*limine* rulings are not even binding on the trial judge; "the judge may always change his mind

during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000).[3]  The Court

hesitates to enter an order approving disregard for a trial management deadline, but recognizes

the tension between early resolution of evidentiary issues—which assists counsel in preparing

for trial and saves time during trial—and a party's substantive right to object to evidence during

trial.  Because the Court prefers to consider motions on their merits and recognizes that adequate

trial preparation militates in favor of considering as many evidentiary challenges as possible

before the start of trial, the Court will consider the Government's late-filed motion instead of

delaying a ruling until trial.[4]

---

[2]  District of Idaho Local Civil Rule 16.2 allows a trial judge to make such pretrial order
or orders, "as may be appropriate."

[3]  Although this case was decided before Federal Rule of Evidence 103 was amended in
2000, the advisory committee notes to that rule explain that "[e]ven when the court's ruling is
definitive, nothing in the amendment prohibits the court from revisiting its decision when the
evidence is to be offered."

[4]  An additional reason exists to consider the Government's motion.  The Government
indicates that its second motion is based on arguments made by Plaintiffs' counsel in Plaintiffs
opposition to the Government's first motion in limine.  Def.'s Mem. on Second Mot., p. 2
(Docket No. 75-2).  The Government reports it was in this opposition that Plaintiffs stated Dr.
Hall "says that the delivery was mismanaged, in part, because: (1) "Dr. Ogden allowed excessive
contractions (tachysystole) without ever testing the Pitocin dosage (titration) to see if labor could
progress with five or less contractions per ten minute period, a normal rate"; and (2) "[t]here
were excessive contractions that were allowed by Dr. Ogden to continue for hours when there
was no need for them." Pls.' Opp'n Mem., pp. at 3-4 (Docket No. 67).  This opposition was not
filed until June 9, 2009, after the *in limine* motion filing deadline.

**MEMORANDUM DECISION & ORDER - 2**

**B.      Dr. Hall's Opinion on Failure to Decrease/Discontinue Pitocin was Properly
Disclosed and may be Considered at Trial**

The Government seeks to exclude testimony from Plaintiffs' expert Dr. Michael L. Hall

that Dr. Samuel Ogden breached the standard of care by failing to decrease or discontinue the

Pitocin/Oxytocin "in the face of tachysystole standing alone, i.e., tachysystole without a

nonreassuring FHR tracing."  Def.'s Mem. on Second MoT., pp. 1-2 (Docket No. 75-2).  The

Government submits that this opinion was not disclosed in Dr. Hall's initial report and it is

directly contrary to Dr. Hall's deposition testimony explaining the opinions expressed in his

initial report.  *Id.* at p. 3.

Federal Rule of Civil Procedure 37(c)(1) excludes from trial any expert opinions that

were not disclosed pursuant to the requirements of Rule 26(a)(2), unless the failure to disclose is

substantially justified or harmless.  *See Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d

1101, 1107 (9th Cir. 2001).  Rule 26(a)(2)(B) provides: "The report must contain a complete

statement of all opinions to be expressed and the basis and reasons therefor . . ."

In his initial report, Dr. Hall stated, in part, that Dr. Ogden breached the standard of care

by "failing to detect unnecessary hyperstimulation of the uterus[,] . . . failing to turn the

Oxytocin off or at least turn it down to see if the nonreassuring aspect of the pattern could be

corrected as usually happens[,] . . . [and] allowing the fetus to be subjected to unnecessary stress

causing hypoxia."  Def.'s Mem. on First Mot., Ex. F, Hall Aff., ¶ 9 (Docket No. 58-8).  The

Government argues that "[i]t was unclear from the report whether Dr. Hall was defining

hyperstimulation as six or greater contractions in a ten minute period *or* as six or greater

contractions in a ten minute period *coupled with* a nonreassuring FHR tracing," and thus,"

unclear whether Dr. Hall was alleging Dr. Ogden breached the standard of care by failing to

decrease or discontinue the Pitocin in the face of six or more contractions in a ten minute period

(tachysystole), *or* by failing to decrease or turn down the Pitocin in the face of tachysystole coupled with a nonreassuring FHR tracing."  Def.'s Mem. on Second Mot., pp. 1-2 (Docket No. 75-2).

The Government questioned Dr. Hall about these issues at his deposition and asserts now that "he testified very clearly that he was alleging Dr. Ogden breached the standard of care by failing to decrease or discontinue the Pitocin in the face of tachysystole coupled with a nonreassuring FHR tracing," and that it "has relied upon that testimony in preparing its case." Def.'s Reply, p. 2 (Docket No. 82).  Considering Dr. Hall's deposition testimony as a whole (the portions provided by counsel), however, reveals that Dr. Hall's testimony was not squared in the exact box argued by the Government.

Dr. Hall discussed the different ways in which "hyperstimulation" can be defined, and in one response indicated that tachysystole is defined the same as hyperstimulation.  *See* Second Grisham Decl., Ex. 1, Hall Dep., pp. 25-26 (Docket No. 75-7).  He also testified that, in Ms. Trowbridge's case, the Pitocin should have been turned down or stopped at the time when "there's a tachysystole.  There's six or more contractions in a ten-minute period of time with minimal variability.  Variability is decreased, and there's recurrent late decelerations or repetitive late decelerations."  *Id.*, Hall Dep., p. 29.

The Government questioned Dr. Hall as follows:

> Q.  And I just want to make sure I understand what you're saying. If you have, whether you call it hyperstimulation or tachysystole, do you simply have greater than five contractions in a ten-minute period, but there's no indication of stress on the strip, do you reduce the – or stop the Pitocin under those circumstances or do you have to have in conjunction with the contraction pattern a nonreassuring strip?
>
> A.   It's better to stop when you have tachysystole before you get all abnormal strip because you really don't want the baby to be

MEMORANDUM DECISION & ORDER - 4

stressed. You want to stop it before the baby's stressed, and then put the pattern back into one where you have five or less contractions per ten-minute period of time. If the baby gets stressed on five or less contractions in a ten-minute period of time, then you can further stop or reduce the Pit.

Q. And is it your opinion that that's the standard of care, that when you get six or more contractions in a ten-minute period, that you have to stop or reduce the Pitocin?

A. That's the standard of care.

*Id.*, Hall Dep., pp. 27-28.

Dr. Hall goes on to make statements that arguably undermine these earlier statements, and the above statements may relate more to a nursing standard of care than standards for doctors, *see id.* at p. 29[5], however, the Court cannot say that any opinion Dr. Hall may have regarding turning the Pitocin down or off in relation to the tachysystole was not properly disclosed in his initial report and deposition testimony. Rather, any inconsistencies in Dr. Hall's deposition testimony provide fodder for the Government's cross-examination of Dr. Hall at trial. *See, e.g., Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993) ("[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence").

---

[5]

Q. So under your protocol, a physician has the discretion to continue the Pitocin even in the presence of six or more contractions in a ten-minute period?
A. Correct.
Q. So if a physician then elects to continue with the Pitocin in the face of that kind of a contraction pattern, that's not necessarily a breach of the standard of care?
A. Yeah, if the strip remains reactive, it's not a breach in the standard of care.
Q. And it becomes a breach if, what, the physician continues the Pitocin in the face of nonreassuring aspects on the strip?
A. Correct.

**MEMORANDUM DECISION & ORDER - 5**

Additionally, although the Government argues that " Plaintiffs should not be permitted on the eve of trial to introduce a standard of care issue that was not expressed by Dr. Hall in either his initial report or deposition testimony," Def.'s Reply, p. 6 (Docket No. 82), the record reveals that the Government has had the opportunity to consider Dr. Hall's opinions and respond accordingly.  The Government's expert, Dr. Richard Depp, responded to Dr. Hall's standard of care opinion and his opinions on whether those standards had been breached.  *See* Def.'s Mem. on First Mot., Ex. G, Depp letter, p. 5 (Docket No. 58-8) (noting his opinions "[c]ontrary to the testimony of plaintiffs' experts").  Dr. Depp opined:

> Dr Ogden's monitoring and management were appropriate even with Mrs. Trowbridge's contraction frequency, termed 'tachysystole'.  Her labor contractions were more frequent and shorter than average.  But, the presence of the isolated observation of *tachysystole alone* allows reasonable physicians to expectantly watch the contraction pattern as well as the fetal heart rate for patterns suggestive of evidence clinical significant fetal problems.

*Id.* at p. 8 (emphasis added).  Dr. Depp's report was filed after Dr. Hall's deposition took place.[6]  Thus, Plaintiffs are not introducing a new theory on the eve of trial and the Government has responsive expert testimony to use in challenging Dr. Hall's credibility and opinions at trial.  For all of these reasons, the Government's Second Motion in Limine is denied with respect to the issue of Dr. Hall's testimony on the impact of tachysystole alone on the decision to not turn down or off the Pitocin in Ms. Trowbridge's case.

**C.     Any Testimony by Dr. Hall on the Standard of Care for a Potential Urgent C-Section in 17 Minutes or Less is Limited to Rebuttal**

Defendant also seeks to exclude the opinion expressed in Dr. Hall's rebuttal report that Dr. Ogden breached the standard of care by failing to prepare for a potential urgent C-section in

---

[6]  Dr. Depp's letter is dated November 14, 2008; Dr. Hall's deposition occurred on October 21, 2008.

under 17 minutes on the grounds the United States will not present the expert opinion to which

this rebuttal opinion is addressed.  Def.'s Mem. on Second Mot., pp. 1-2 (Docket No. 75-2).

Plaintiffs respond that they wish to "simply reserve the right to rebut any testimony" offered by

the Government.  Pls.' Resp. Mem., p. 2 (Docket No. 81).  The Court interprets this to mean that

Plaintiffs will not, as part of their case in chief, introduce any opinion on the timing of the C-

section.  Accordingly, the Government's motion is granted in this limited respect, to exclude

expert testimony on the standard of care as it relates to the timing of the C-Section.[7]

## II.  ORDER

**IT IS THEREFORE HEREBY ORDERED** that United States' Second Motion in

Limine (Docket No. 75) GRANTED, in part, and DENIED, in part as set forth more specifically

above.

DATED:  **June 25, 2009**

Honorable Ronald E. Bush
U. S. Magistrate Judge

---

[7]  The Court will consider at trial whether to allow rebuttal testimony on this issue should
the Government introduce any opinion/evidence on the C-section "timing issue."

MEMORANDUM DECISION & ORDER - 7